FILED
Nov 21, 2019
03:36 PM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT MURFREESBORO

| | | |
|---|---|---|
| **LEON NEWMAN, JR.,** | ) | **Docket No.: 2019-05-0606** |
| **Employee,** | ) | |
| **v.** | ) | |
| | ) | |
| **EARTH SOLUTIONS, INC.** | ) | **State File No.: 35536-2017** |
| **Employer,** | ) | |
| **And** | ) | |
| | ) | |
| **BRIDGEFIELD CAS. INS. CO.,** | ) | **Judge Robert Durham** |
| **Insurer.** | ) | |

---

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS AND TEMPORARY DISABILITY BENEFITS

---

The Court conducted an expedited hearing on November 13, 2019 to determine whether Mr. Newman is entitled to additional and temporary disability benefits. The primary medical issue is whether Mr. Newman's current left-sided complaints are due to the stress placed on the spinal discs below the ones previously operated on, thus making additional fusions reasonable and necessary. The Court holds Mr. Newman established that he is likely to prove that the additional fusions are reasonable and necessary for treatment of his work-related injury, and he is not yet at maximum medical improvement.

### History of Claim

According to his affidavit and testimony, Mr. Newman was driving a truck hauling an empty low-boy trailer in the course and scope of his employment with Earth Solutions when another truck "t-boned" him on May 1, 2017. Mr. Newman asserted the accident caused severe pain in his neck, which radiated into his right shoulder blade and across his collarbone. He also testified that he had never experienced these symptoms or any limitations on his ability to work before the accident. Earth Solutions accepted his claim and eventually authorized care with orthopedist Juris Shibayama, M.D.

Dr. Shibayama first saw Mr. Newman on November 30. The record documents

1

complaints of right neck, clavicle, and shoulder pain, but does not mention any left-sided issues. An MRI, as reviewed by the radiologist, revealed moderate left, mild right C5-C6 foraminal stenosis and canal stenosis as well as bilateral foraminal stenosis and canal stenosis at C6-7.[1] The radiologist also noted broad disc osteophyte complexes at C3-4 and C4-5 with minimal stenosis. After reviewing the MRI himself, Dr. Shibayama diagnosed cervical radiculopathy, which he primarily related to the accident. He performed cervical fusions at C5-6 and C6-7 in June 2018.

Mr. Newman testified that the surgery substantially relieved his right-sided symptoms, but three days afterward he began suffering severe pain in the left side of his neck, down his left shoulder blade, and into his upper arm. An August 18 CT scan, as interpreted by the radiologist, revealed worsening stenosis at C2-3 and C3-4 when compared to the pre-surgery MRI. The radiologist also felt there was "moderately severe left neuroforaminal encroachment with probable contact of the exiting C6 nerve root" at the C5-6 level.

Dr. Shibayama felt the CT scan revealed advancing stenosis at C3-5 which was "much worse" than the pre-surgery MRI showed. He ordered another MRI, which the radiologist interpreted as no significant abnormalities at C3-4, and an osteophyte at C4-5 which caused mild cord deformity.

Based on the tests, Dr. Shibayama diagnosed "adjacent segment degeneration from fusion," which was caused by enlarging the space between the discs being fused in order to put in the plate, thus placing increased pressure on the adjacent discs. He felt the increased pressure was 80% responsible for the rapid degeneration at C3-5 and additional fusions were needed at those levels to alleviate Mr. Newman's pain. He also recommended pain management and kept Mr. Newman off work. Earth Solutions did not authorize the fusions or pain management, although it continued to pay temporary disability benefits.

Instead of authorizing surgery, Earth Solutions sent Mr. Newman for an independent medical evaluation with orthopedist Gray Stahlman, M.D. Dr. Stahlman testified that Mr. Newman complained of severe left neck, shoulder girdle, and arm pain with weakness that began three days after the surgery. He could not lift his shoulder more than forty-five degrees, and Dr. Stahlman suspected atrophy in his left arm.

Dr. Stahlman also reviewed the CT and MRIs. He felt the fusions at C5-7 were appropriate and the cages were properly placed, although he noted that the disc spacing at C5-6, was "particularly distracted," meaning that the disc space had been opened up by

---

[1] Spinal stenosis is defined as the "abnormal narrowing of the spaces in the spine." https://www.mayoclinic.org/diseases-conditions/spinal-stenosis/symptoms-causes/syc-20352961 (last visited Nov. 21, 2019).

2

the cage to approximately 100 percent from the initial spacing. Further, he did not observe any appreciable difference in stenosis at the C3-5 levels between the pre- and post-surgery MRIs. In fact, he said they were "essentially identical."

Based on the exam and record review, Dr. Stahlman believed that Mr. Newman likely suffered from a stretch of his spinal cord and nerves from the C5-6 disc space distraction. Alternatively, his pain could also be caused by a stretch of one or more nerve groups in his left neck and shoulder while he was positioned for surgery. Thus, though he believed Mr. Newman's post-surgical condition was most likely due to the fusions, he thought it unlikely that the symptoms were due to degenerative changes at C3-5 since the changes were the same as before the surgery and Mr. Newman's symptoms manifested themselves in a "markedly different" way immediately after surgery. He did not believe additional fusions would alleviate all of Mr. Newman's symptoms, although he conceded surgery could possibly, but not likely, provide some benefit.

Instead of surgery, Dr. Stahlman recommended that Mr. Newman undergo interventional pain management and physical therapy. He feared that Mr. Newman was developing adhesive capsulitis in his left shoulder due to his pain, and possibly complex regional pain syndrome from a nerve injury. He did not believe there were any other options for treatment. In light of Dr. Stahlman's IME, Earth Solutions denied surgery.

Mr. Newman then underwent an EMG, which did not reveal any cervical radiculopathy. He also returned to Dr. Shibayama on January 31, 2019. Due to the surgery denial, Dr. Shibayama placed Mr. Newman at maximum medical improvement (MMI). However, he explained that he did this because of the denial, since he had nothing more to offer Mr. Newman and his "hands [were] tied." Later, he withdrew this MMI assignment in a letter to Mr. Newman's counsel as well as in his deposition, where he made it clear that that he only placed Mr. Newman at MMI so that he could possibly obtain surgery through his private insurance. Even though Dr. Shibayama placed Mr. Newman at MMI on January 31, he ordered pain management and kept him off work.

Instead of pain management, Earth Solutions sent Mr. Newman to Robert Todd, M.D. upon Dr. Stahlman's recommendation. Dr. Todd did not give his opinion as to the source of Mr. Newman's neuropathic pain, but he recommended a steroid injection at the left C-6 level and additional medications. He also kept Mr. Newman off work. The treatment did not alleviate Mr. Newman's symptoms.

Mr. Newman next saw Dr. Jeffrey Hazlewood for pain management. In his initial report, Dr. Hazlewood indicated that he did not find a non-organic component to Mr. Newman's complaints nor any risk factors for addiction; therefore, opioids were an acceptable mode of treatment. He also diagnosed a frozen left shoulder. As to causation, Dr. Hazlewood felt that Mr. Newman might have sustained an injury to the brachial

plexus or a left-shoulder rotator cuff tear.

After several months of pain management, a negative brachial plexus EMG study and a negative left-shoulder MRI, Dr. Hazlewood stated he was at a loss as to the source of Mr. Newman's complaints. Mr. Newman then returned to Dr. Shibayama in June 2019. On exam, he noted that Mr. Newman's complaints had worsened, and he documented atrophy and weakness in Mr. Newman's left shoulder and arm. He renewed his recommendation for additional fusions and indicated Mr. Newman could not work until he had surgery.

Earth Solutions sent the recommendation to utilization review with Dr. Robert Holladay. In his July 4 report, Dr. Holladay stated the additional fusions were not reasonable or necessary. As grounds, he cited the lack of significant MRI findings at the C3-5 levels, the lack of response to the C6 steroid injection, and the ongoing left shoulder evaluation.[2]

Following the denial, Dr. Shibayama appealed the decision to the Bureau's medical director, Dr. Robert Snyder. Dr. Snyder reversed the UR decision, stating that "the progressive symptoms and function are unlikely to stabilize without the surgery." On July 23, 2019, he ordered the fusion be approved. As of the hearing, the surgery has not been performed.

In preparation for the hearing, the parties took the depositions of Drs. Shibayama and Stahlman, which were made exhibits. Mr. Newman testified that before the accident he was able to perform all of his job duties without limitation. Now, he remains in severe pain on the left side from his neck to just above his left elbow. He demonstrated that he cannot lift his left arm and it is very weak. He cannot perform simple functions such as washing his hair or putting on a buttoned shirt, and it would be impossible for him to drive a vehicle with a standard shift. He stated that he has not worked since his surgery.

**Findings of Fact and Conclusions of Law**

Mr. Newman must present sufficient evidence establishing that he is likely to prove at trial that he is entitled to additional surgery and temporary disability benefits. *See* Tenn. Code Ann. § 50-6-239(d)(1). To establish entitlement, he must show he is likely to prove: (1) a work-related injury; (2) the additional surgery is reasonable and necessary for treating his injury; and, (3) he has yet to reach MMI and has been unable to work since he last received temporary disability benefits. The Court will address each issue in turn.

---

[2] Dr. Holladay did not have access to records documenting Mr. Newman's response to a left shoulder bursa injection at the time of his evaluation. Mr. Newman testified that none of the post-surgical procedures served to relieve his symptoms.

In order to establish compensability, Mr. Newman must prove that he sustained an injury from a specific event that primarily arose out of and in the course of employment identifiable by time and place. Tenn. Code Ann. § 50-6-102(14)(A). At the hearing, Earth Solutions' counsel contended that Mr. Newman failed to provide sufficient evidence establishing that the accident occurred while he was in the course and scope of his employment.[3]

According to Mr. Newman's unrebutted evidence through affidavit and testimony, he was driving a truck hauling an empty low-boy trailer in the course and scope of his employment with Earth Solutions when he was "t-boned" by another truck. He then managed to drive the truck back to Earth Solutions' yard. Dr. Shibayama, the authorized physician, testified it is more likely than not that Mr. Newman's resulting symptoms and need for fusions at C5-6 and C6-7 primarily arose out of the accident. This opinion is presumed correct and Earth Solutions did not provide contrary medical evidence to rebut it. Tenn. Code Ann. § 50-6-102(14)(E). Indeed, Dr. Stahlman agreed with Dr. Shibayama on these points. Thus, the Court holds that Mr. Newman is likely to prove that he sustained an injury that primarily arose out of and in the course and scope of employment on May 1, 2017, and that the fusions at C5-7 were reasonable and necessary treatment for that injury.

The more complex issue is whether Dr. Shibayama's recommendation for additional fusions is reasonable and necessary for Mr. Newman's current left-sided symptoms. It is not a question of causation—Drs. Shibayama and Stahlman agree to a reasonable degree of medical certainty that the surgery is the primary cause of Mr. Newman's current symptoms. This renders the condition causing the symptoms compensable as well. *Creasman v. Waves, Inc.*, 2018 Tn. Wrk. Comp. App. Bd. LEXIS 13, at *12 (April 16, 2018)(quoting *Rogers v. Shaw*, 813 S.W.2d 397, 400 (Tenn. 1991)("[A]ll the medical consequences and sequelae that flow from the primary injury is compensable.") The question the Court must address is whether the symptoms are due to adjacent segment deterioration at the C3-5 levels, or are they due to a different problem that will not be remedied by fusing the discs at those levels. On this issue, Dr. Shibayama and Dr. Stahlman materially differ.

When confronted with conflicting opinions, the Court has discretion to determine which opinion to accept. *Patterson v. Huff & Puff Trucking*, 2018 Tn. Wrk. Comp. Bd. LEXIS 33, at *9 (July 6, 2018). When doing so, the Court may consider, among other things, "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information

---

[3] Until the hearing, Earth Solutions had not denied Mr. Newman's entitlement to benefits, only what the scope of those benefits should be.

5

by other experts." *Bass v. The Home Depot U.S.A, Inc.*, 2017 TN Wrk Comp. App. Bd. LEXIS 36, at *9 (May 26, 2017).

Here, both doctors are trained, orthopedic spine surgeons. Both have personally examined Mr. Newman and have reviewed all relevant tests and records. In Dr. Stahlman's favor is the fact that the post-surgery MRI seems to agree with his position that there was little change at the C3-5 levels from before the surgery to justify Dr. Shibayama's position of adjacent segment deterioration. Dr. Shibayama also admitted that he widened the space on the right side of C6 considerably, and Dr. Stahlman determined it was at least by 100%, which he believed could have stretched the spinal cord. Further, the post-surgery EMG did not reveal any cervical radiculopathy at the C3-5 levels. Finally, Dr. Holladay corroborated Dr. Stahlman's opinion regarding the pre- vs. post-surgery degeneration at the C3-5 levels when he recommended denying surgery.

Favoring Dr. Shibayama is the fact that he is Mr. Newman's authorized treating physician, which entitles his opinion to a presumption of correctness. Tenn. Code Ann. § 50-6-204(H). Further, he performed the surgery and so had first-hand knowledge as to the procedure as well as an opportunity to actually see Mr. Newman's spinal condition. The post-surgery CT scan, as interpreted by the radiologist supported Dr. Shibayama's opinion that the stenosis at C3-5 had worsened since the pre-surgery MRI.

In addition, none of the tests and procedures proposed by Drs. Stahlman, Todd and Hazlewood confirmed that Mr. Newman's symptoms came from a brachial plexus nerve stretch, a stretch of the spinal cord at C6, or his left rotator cuff. None of the procedures improved Mr. Newman's symptoms either. In fact, Dr. Shibayama pointed to the fact that the epidural steroid injection at C6 did not alleviate Mr. Newman's pain as evidence that it did not originate at that level. According to Mr. Newman, his complaints have worsened and Dr. Shibayama documented atrophy in his left arm at his last visit, which was indicative of worsening nerve damage. Finally, Dr. Snyder agreed with Dr. Shibayama's opinion when he reversed the UR denial and ordered Earth Solutions to authorize surgery.[4]

After considering and weighing all the evidence, the Court finds that Earth Solutions failed to overcome the presumption given to Dr. Shibayama's opinion. Thus, the Court holds that Earth Solutions shall authorize the fusions at C3-5 as he recommended.

As to temporary total disability benefits, Mr. Newman must show the duration of his work-related inability to work. *See Shepherd v. Haren Const. Co., Inc.*, 2016 TN

---

[4]Earth Solutions also argued that Dr. Shibayama's reversal as to the date of MMI served to lessen his credibility on other issues. However, his January 31 medical record and his deposition made it clear that he continued to believe surgery was necessary, and he only said Mr. Newman was at MMI because his "hands were tied." The Court does not feel his decision injured his credibility.

6

Wrk. Comp. App. Bd. LEXIS 15, at *13 (Mar. 30, 2016). Here, even though Dr. Shibayama stated Mr. Newman was at MMI on January 31, he did not allow him to return to work. Dr. Stahlman believed that Mr. Newman was at MMI on January 31, but he did not recommend that Mr. Newman return to work. Further, Dr. Todd expressly took Mr. Newman off work while seeing him. No doctor has released Mr. Newman to return to employment, and he testified that he continues to be unable to work. Of course, Dr. Shibayama has now testified that he never truly felt Mr. Newman was at MMI, and he has taken him off work until after surgery.

Thus, the issue turns on whether Mr. Newman is, or ever was, at MMI for his work-related injury. As stated above, the Court finds Dr. Shibayama's opinion more persuasive as to Mr. Newman's condition, and that he adequately explained his reason for stating Mr. Newman was at MMI on January 31. Thus, the Court holds that Mr. Newman is entitled to temporary total disability benefits, at the stipulated compensation rate of $683.50, from February 1, 2019 through present. The benefits shall continue until Dr. Shibayama determines Mr. Newman is at MMI or is able to return to work.

IT IS, THEREFORE, ORDERED that:

1. Earth Solutions shall authorize and pay for Dr. Shibayama to perform the recommended fusions at C3-5.

2. Earth Solutions shall pay Mr. Newman past temporary total disability benefits in the amount of $28,511.71 and shall continue to pay these benefits until Mr. Newman reaches MMI or is able to return to work.

3. This case is set for a Scheduling Hearing on **January 13, 2020**, at **2:00 p.m. Central Time**. The parties must call 615-253-0010 or toll-free at 855-689-9049 to participate. Failure to call might result in a determination of the issues without your participation.

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

7

ENTERED November 2, 2019.

Robert V. Durham, Judge
Court of Workers' Compensation Claims

## APPENDIX

Exhibits:

1. Notice of First Payment of Compensation
2. Final Medical Report
3. Table of Contents for Medical Records
4. UR Denial and Appeal
5. Mr. Newman's affidavit
6. Wage Statement
7. First Report of Injury
8. Collective Medical Records
9. Deposition of Gray Stahlman, M.D.
10. Deposition of Juris Shibayama, M.D.

Technical Record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Request for Expedited Hearing filed by Earth Solutions
5. Dispute Certification Notice
6. Mr. Newman's Witness and Exhibit List
7. Earth Solutions' Witness List and Pre-Hearing Brief
8. Mr. Newman's Pre-Hearing Brief

8

## CERTIFICATE OF SERVICE

A copy of the Expedited Hearing Order Granting Benefits was sent as indicated on November 21, 2019.

| Name | Certified Mail | Email | Service sent to: |
|------|----------------|-------|------------------|
| Jill Draughon | | X | jdraughon@hughesandcoleman.com<br>dforbes@hughesandcoleman.com |
| Seth Granda | | X | Seth.granda@petersonwhite.com |

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

9



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# EXPEDITED HEARING NOTICE OF APPEAL

Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

**Docket #:** _____

**State File #/YR:** _____

**Employee**

v.

**Employer**

## Notice

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____ to the Workers' Compensation Appeals

Board. [List the date(s) the order(s) was filed in the court clerk's office]

**Judge** _____

## Statement of the Issues

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

## Additional Information
**Type of Case** [Check the most appropriate item]

☐ Temporary disability benefits
☐ Medical benefits for current injury
☐ Medical benefits under prior order issued by the Court

## List of Parties
**Appellant (Requesting Party):** _____ At Hearing: ☐ Employer ☐ Employee

Address: _____

Party's Phone: _____ Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Address: _____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ SF#: _____ DOI: _____

## Appellee(s)
**Appellee (Opposing Party):**_____At Hearing: ☐Employer ☐Employee

Appellee's Address: _____

Appellee's Phone: _____ Email:_____

Attorney's Name: _____ BPR#: _____

Attorney's Address: _____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email:_____

*** Attach an additional sheet for each additional Appellee ***

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules of Board of Workers' Compensation Appeals on this the _____day of _____, 20 ___

[Signature of appellant or attorney for appellant] _____



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name: _____     2. Address: _____

3. Telephone Number: _____     4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____     Relationship: _____

_____     Relationship: _____

_____     Relationship: _____

_____     Relationship: _____

6. I am employed by: _____

    My employer's address is: _____

    My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

LB-1108 (REV 11/15)                                           RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month     Medical/Dental   $ _____ per month

Groceries       $ _____ per month     Telephone     $ _____ per month

Electricity       $ _____ per month     School Supplies $ _____ per month

Water         $ _____ per month     Clothing      $ _____ per month

Gas          $ _____ per month     Child Care    $ _____ per month

Transportation $ _____ per month     Child Support   $ _____ per month

Car          $_____ per month

Other        $ _____ per month (describe: _____ )

10. Assets:

Automobile         $ _____      (FMV) _____

Checking/Savings Acct. $ _____

House              $ _____      (FMV) _____

Other              $ _____      Describe:_____

11. My debts are:

| Amount Owed | To Whom |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires:_____